UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

DUPRIE MCMILLAN and
ELAINE MCMILLAN,

                       Plaintiffs,

             -against-                **COMPLAINT**
                                          **AND DEMAND FOR JURY TRIAL**

EAST 168th STREET ASSOCIATES, L.P.,
AMS REALTY COMPANY, LLC, MARTIN SHNAY,
and ABRAM SHNAY,

                      Defendants.
--------------------------------------------------------x

## PRELIMINARY STATEMENT

1.      Defendants, Plaintiff Elaine McMillan ("Ms. McMillan)'s landlords refuse to allow her son, Plaintiff Duprie McMillan ("Mr. McMillan"), a disabled veteran who suffered seven strokes, to reside with her in their federally subsidized apartment so that Ms. McMillan can provide her son the daily care he needs to live. Defendants rigidly insist upon barring Mr. McMillan from occupancy on the vague grounds that he has poor credit. Further, Defendants refuse to provide a copy of their policy or the credit report that led to Mr. McMillan's exclusion. Finally, Defendants refuse to consider any modification of their thus far unexplained policy as a reasonable accommodation to his disabilities.

2.      Defendants own and/or control the Unit 4J at 631 East 168th Street, Bronx, NY 10456 ("Subject Apartment"). Plaintiffs Duprie and Elaine McMillan (collectively, "Plaintiffs") seek declaratory, injunctive, and monetary relief under the Fair Housing Amendments Act ("FHAA"), 42 USC §3601, the New York State Human Rights Law, NY Executive Law § 290 et seq., the New York City Rights Law ("NYCHRL"), Administrative Code, NYC § 8-102 et seq.

and the Fair Credit Reporting Act ("FCRA"), 15 USCA § 1681m, based on (a) Defendants'

failure to offer a reasonable accommodation to Mr. McMillan and, by association, Ms.

McMillan; (b) Defendants' failure to engage in any cooperative dialogue as required by the NYC

Human Rights Law § 8-107(28) with respect to Plaintiffs' numerous requests over many months

for reasonable accommodation; and (c) Defendants' failure to clearly and accurately disclose to

Mr. McMillan his rights upon taking an adverse consumer action against him under the Fair

Credit Reporting Act ("FCRA"), 15 USCA §1681m.

3.      Although Mr. McMillan now qualifies for and receives Social Security Disability

Insurance ("SSDI") due to his disabilities that he can use to contribute to the household rent,

(which should be set at 30% of the total household income), he has been prevented from joining

his mother's household as he would otherwise be eligible to do under HUD's rules. Ms.

McMillan, who has resided in Defendants' building since 1984, has also been prevented from

using and enjoying her apartment as a home for family. She has further been denied the ability to

provide care for her disabled son who cannot live independently.

4.      Based on Mr. McMillan's presence in her apartment, Defendants have refused to

allow Ms. McMillan to complete the income recertification required for the continuation of her

housing subsidy. Due to her inability to recertify, Defendants now charge Ms. McMillan market

rent of $2,047 per month—a rent burden that she cannot afford and which, if continued, would

cause her to lose her family home of the last 39 years.  If the subsidy were reinstated, Ms.

McMillan's rent would return to 30% of her household income, which, including Mr.

McMillan's SSDI, would amount to approximately half of their current burden.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 USC §§ 1331 and

1367(a).

6.      Venue is proper in the Southern District of New York pursuant to 28 USC § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

7.      Plaintiffs Duprie McMillan ("Mr. McMillan") and Elaine McMillan ("Ms. McMillan") reside at McKinley Manor Apartments at 631 East 168th Street, Apt 4J, Bronx New York 10456 ("Subject Apartment").

8.      Defendant East 168th Street Associates, L.P. ("168th Assoc.") is an owner and/or lessor of a housing accommodation or dwelling in New York as defined by Section 8-102 of NYCHRL, Section 292 of the NY Exec. Law, and Section 3602 of the FHAA.  Defendant 168th Assoc. has the right to sell, rent or lease, or approve the sale, rental or lease of housing units at the Subject Apartment as defined Section 8-102 of NYCHRL, Section 292 of the NY Exec. Law, and Section 3602 of the FHAA. Defendant 168th Assoc.is a user of credit information pursuant to 15 USCA §1681m.  Defendant 168th Assoc.'s principal place of business and address for service of process is 98 Cutter Mill Road, Great Neck, NY 11021.

9.      Defendant AMS Realty Company, LLC ("AMS Realty") is an owner and/or lessor of a housing accommodation or dwelling in New York as defined by Section 8-102 of NYCHRL, Section 292 of the NY Exec. Law, and Section 3602 of the FHAA. Defendant AMS Realty has the right to sell, rent or lease, or approve the sale, rental or lease of housing units or dwelling at the Subject Apartment as defined by Section 8-102 of the NYCHRL, Section 292 of the NY Exec. Law, and Section 3602 of the FHAA.  Defendant AMS Realty's principal place of business and address for service of process is 98 Cutter Mill Road, Great Neck, NY 11021.

10.      Defendant Abram Shnay is the head officer of Defendant 168th Assoc. and an owner and/or lessor of a housing accommodation or dwelling in New York as defined by Section

-3-

8-102 of the NYCHRL, Section 292 of the NY Exec. Law, and Section 3602 of the FHAA. Abram Shnay has the right to sell, rent or lease, or approve the sale, rental or lease of housing or dwelling units at the Subject Apartment as defined by Section 8-102 of the NYCHRL, Section 292 of the NY Exec. Law, and Section 3602 of the FHAA. Defendant Abram Shnay's principal place of business and address for service of process is 450 West End Avenue, Apt 10B, New York, NY 10024.

11.    Defendant Martin Shnay is an officer of Defendant 168th Assoc. and an owner and/or lessor of a housing accommodation in New York as Section 8-102 of the NYCHRL, Section 292 of the NY Exec. Law, and Section 3602 of the FHAA. Defendant Martin Shnay has the right to sell, rent or lease, or approve the sale, rental or lease of housing or dwelling units at the Subject Apartment as defined by Section 8-102 of NYCHRL, Section 292 of the NY Exec. Law, and Section 3602 of the FHAA. Defendant Martin Shnay's principal place of business and address for service of process is 450 West End Avenue, Apt 10B, New York, NY 10024.

## STATUTORY AND REGULATORY SCHEME

**The Fair Housing Amendments Act**

12.    Congress enacted the Fair Housing Amendments Act ("FHAA") declaring that "[i]t is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States."  42 USC § 3601 (2004).

13.    The FHAA prohibits discrimination in the sale or rental of housing. Section 3604 makes it impermissible for the owner of a dwelling "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter…."  42 USC § 3604(f)(1)(A).

14.    Section 3604 also prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provisions of services or facilities in connection with such dwelling, because of a handicap of that person…." 42 USC § 3604(f)(2)(A).

15.    The federal regulations implementing the FHAA make it unlawful to discriminate in the terms, conditions or privileges of rental of dwelling, to refuse to rent a dwelling, to refuse to negotiate for the rental of a dwelling, because of handicap.  24 CFR § 100.50; 24 CFR § 100.60 (2004).

16.    The FHAA defines "handicap" as "a physical or mental impairment which substantially limits one or more of such person's major life activities…." 42 U.S.C. § 3602(h)(1).  See also 24 C.F.R. § 100.201.

17.    The FHAA provides that "discrimination includes a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling…." 42 USC § 3604(f)(3)(B).  See also, 24 CFR § 100.204.

18.    The FHAA also provides that "any person associated with that buyer or renter" can also maintain a claim for disability discrimination under federal law. 42 USC § 3604(f)(1)(C).

**The New York State Human Rights Law**

19.    The New York State Legislature enacted the New York State Human Rights Law to "eliminate and prevent discrimination in…housing accommodations…."  NY Executive Law ("NY Exec. Law") § 290(3).

20.     The New York State Human Rights Law prohibits discrimination in the sale or rental of housing accommodations. Section 296(5)(a) of the NY Exec. Law makes it impermissible to "discriminate against any person because of the race, creed, color, national origin, sexual orientation, military status, sex, age, disability, marital status, or familial status in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith."  NY Exec. Law § 296(5)(a)(2).

21.     The NYS Human Rights Law defines "disability" as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques…."  NY Exec. Law § 292(21).

22.     Section 296(18) of the NY Exec. Law makes it an "unlawful discriminatory practice" to "refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford said person with a disability equal opportunity to use and enjoy a dwelling…."  NY Exec. Law § 296(18)(2).

23.     Under the NYS Human Rights Law, an accommodation is "reasonable" if it does "not impose an undue hardship on the business, program or enterprise of the entity from which action is requested." NY Exec. Law § 292 (21-e).

24.     The NYS Human Rights Law and its implementing regulations also create a cause of action for discrimination based on an "individual's known relationship or association with a member or members of a protected category covered under the relevant provisions of the Human Rights Law." 9-CRR-NY 466.14(c).

**The New York City Human Rights Law**

25.    The New York City Human Rights Law ("NYCHRL") makes it an unlawful discriminatory practice "to refuse to sell, rent, lease, approve the sale, rental or lease or otherwise deny to or withhold from any person …a housing accommodation…because of…disability…" or "to discriminate against any person because of …disability…in the terms conditions or privileges of the sale, rental or lease of any such housing accommodation…."  NYCHRL §§ 8-107(5)(a)(1)(a)-(b).

26.    The NYCHRL requires that owners of housing accommodations make reasonable accommodations to enable people with a disability "to enjoy the right or rights in question…." NYCHRL § 8-107(15).

27.    The NYCHRL defines disability broadly as "any physical, medical, mental or psychological impairment, or a history or record of such impairment," NYCHRL § 8-102 (16)(a).

28.    The burden of providing undue hardship lies with the owner accommodation on the operation of the facility. NYCHRL §§ 8-102.

29.    To prove a violation of the NYCHRL, the Plaintiff or an individual with a known association with the Plaintiff must show that (a) they have a disability; (b) that the covered entity knew or should have known about the disability; (c) that an accommodation would enable the tenant to enjoy rights to the apartment; and (d) that the covered entity failed to provide the accommodation. See *In re Comm'n on Human Rights ex rel. Stamm v. E&E Bagels*, OATH Index No. 803/14, Dec. & Order, 2016 WL 1644879, at *6 (Apr. 21, 2016).

30.    The term "reasonable accommodation means any accommodation that made does not cause undue hardship to the conduct of the covered entity's business." Id. § 8-102; *Stamm,*

2016 WL 1644879, at *6 ("An accommodation is only unreasonable if it causes an undue hardship.")

**Cooperative Dialogues under the New York City Human Rights Law**

31.    Local Law 59 of 2018 requires an owner of a housing accommodation in New York City to engage in a cooperative dialogue with a person requesting a reasonable accommodation for a disability. NYCHRL § 8-107(28).

32.    The term "cooperative dialogue" means:

the process by which a covered entity and a person entitled to an accommodation, or who may be entitled to an accommodation under the law, engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity.

NYCHRL § 8-102, Local Law No. 59 (2018).

33.    The failure to engage in a cooperative dialogue within a reasonable period of time constitutes a separate violation of the NYCHRL and subjects housing providers to additional liabilities under the NYCHRL.

**The Project-Based Section 8 Program**

34.    Project-Based Section 8 subsidies are attached to individual rental units. Subsidies are administered by private landlords who receive payments directly from the US Department of Housing and Urban Development ("HUD").  See Ch. 1 of HUD Multifamily Occupancy Handbook, 4350.3.

35.     In Project-Based Section 8 subsidy programs, the "Total Tenant Payment," also known as tenant's share of the rent, is the greater of 10 percent of gross income or 30 percent of "adjusted" income. See 24 CFR § 5.628. Adjusted income is the amount upon which rent is

based. Adjusted income is gross household income minus $480 per year for minor children, $400 per year for seniors or disabled household members. See 24 CFR § 5.611.

36.     Tenants must timely provide information about changes in family income or composition to complete an annual recertification a follows:

> To ensure that assisted tenants pay rents commensurate with their ability to pay, HUD requires the following:
>
>> 1. Owners must conduct a recertification of family income and composition at least annually. Owners must then recompute the tenants' rents and assistance payments, if applicable, based on the information gathered.
>> 2. Tenants must supply information requested by the owner or HUD for use in a regularly scheduled recertification of family income and composition in accordance with HUD requirements.
>> 3. Tenants must sign consent forms and asset declaration forms.

See 7-4 of HUD Multifamily Occupancy Handbook, 4350.3.

37.     At each annual recertification, the owner must provide the tenant with a copy of the HUD Fact Sheet describing how the tenant's rent is determined, and a copy of the "EIV[1] & You" brochure. See 7-4 of HUD Multifamily Occupancy Handbook, 4350.3.

38.     Annual recertifications should be completed by the tenant's recertification anniversary date. The recertification anniversary date is the first day of the month that the tenant moved into the property. See 7-6 HUD Multifamily Occupancy Handbook, 4350.3.

39.     Tenants may request an interim recertification for changes occurring after the last recertification that affect the total tenant payment or tenant rent and assistance payment for the tenant. Changes to income include, but are not limited to, loss of employment, reduction in

---

[1] EIV stands for Enterprise Income Verification ("EIV") as is a "web-based computer system containing employment and income information on individuals participating in HUD's rental assistance programs." https://www.hud.gov/sites/documents/DOC_7877.PDF

number of hours worked by an employed family member, and becoming a person with a disability. See 7-12 of HUD Multifamily Occupancy Handbook, 4350.3.

40.     Tenants must notify the owner when a new family member moves out of the unit, the family proposes to move a new member into the unit, an adult member of the family who was unemployed on the most recent certification or recertification obtains employment, or family's income cumulatively increases by $200 or more per month. See 7-12 of HUD Multifamily Occupancy Handbook, 4350.3.

41.     Owners must process an interim recertification if a tenant reports: a change in family composition, an increase in a family's cumulative income of $200 or more a month or an increase in allowances. See 7-13 of HUD Multifamily Occupancy Handbook, 4350.3.

42.      Owners are responsible for processing all recertifications in a timely manner. See 7-8 of HUD Multifamily Occupancy Handbook, 4350.3.

43.     If the annual recertification is not completed because the tenant is out of compliance, the tenant must begin paying market rate on the recertification anniversary date. See, 7-8(D)(3)(b), HUD Multifamily Occupancy Handbook, 4350.3. However, after assistance is terminated, "assistance should be reinstated if 1) assistance is available at the property 2) the tenant submits the required information; and 3) the owner determines that the tenant qualifies for assistance." See, 7-8(D)(3)(c), HUD Multifamily Occupancy Handbook.

**The Fair Credit Reporting Act**

44.     The Fair Credit Reporting Act ("FCRA") is a federal consumer protection statute that establishes credit reporting practices that protect consumers with regard to confidentiality, accuracy, relevancy, and proper utilization of consumer credit, personnel, insurance, and other information. See 15 U.S.C. § 1681 et. seq.

45.     While much of FCRA regulates the conduct of credit reporting agencies, FCRA also imposes certain obligations on the conduct of parties, such as landlords who seek credit information from credit reporting agencies. According to the Fair Trade Commission's Policy Statements, a "consumer who applies to rent an apartment" creates a legitimate business reason to conduct credit screening under the FCRA. 16 C.F.R. Part 600, App., § 604(3)(E), cl. 3.

46.     To allow consumers, including prospective renters, an opportunity to enforce their rights under FCRA, landlords must inform the consumer (prospective tenant) of the reason for denial as well as provide, in writing, the contact information for the reporting agency that supplied the rental application screening. 15 USC § 1681m.

47.     Specifically, a landlord must provide "notice of the adverse action" (commonly known as a "615a notice") which contains the following disclosures pursuant to 15 USC § 1681m:

a)  Notice that adverse action was taken based on information obtained from a consumer reporting agency, 15 USC § 1681m(a)(1);
b)  The consumer's right to (i) obtain a free copy of the consumer report from the same consumer reporting agency upon which the adverse action was taken; (ii) The right to dispute the accuracy or completeness of any information in the consumer report, 15 USC § 1681m(a)(4);
c)  The name, address, and phone number of the consumer agency that the owner used to take the adverse action, 15 USC § 1681m(a)(3);
d)  A statement that the consumer agency did not make the adverse decision and cannot provide the consumer with the specific reason for the adverse action, 15 USC § 1681m(a)(3)(A);
e)  If a credit score was a factor in making an adverse decision, the reported credit score must be disclosed, 15 USC § 1681m(h)(5)(E).

48.     Failure to follow disclosure requirements under FCRA can lead to liability including monetary relief and reasonable attorneys' fees and costs. 15 USCA §§ 1681n – 1681o.

## STATEMENT OF FACTS

49.     Duprie McMillan ("Mr. McMillan") is a 52-year-old veteran of the United States Marines with a handicap or disability within the meaning of the Fair Housing Amendments Act, New York State Human Rights Law, and the New York City Human Rights Law. Mr. McMillan suffered an estimated seven (7) strokes in early 2019 due to complications related to diabetes and high blood pressure, leaving him partially paralyzed on his right side and substantially limiting one or more of his major life activities and normal bodily functions. Mr. McMillan is unable to work because of his disability. Prior to becoming disabled in 2019, Mr. McMillan worked as a truck driver for nearly 25 years.

50.     Due to his physical limitations and disabilities, Mr. McMillan uses a cane to move around his apartment and a motorized chair to travel anywhere outside. Additionally, he has limited control of his bowel movements and uses adult pull-up diapers for when he cannot make it to the restroom quickly. Mr. McMillan also cannot get into a bathtub to clean himself and instead uses a wash bucket and cloth to clean the portion of his body he can reach with his left hand. He requires assistance from his mother or another adult to clean the rest of his body. Mr. McMillan can no longer drive, meaning he can no longer work as a truck driver. Finally, Mr. McMillan's speech is impaired, causing him to stutter frequently.

51.     After serving in the Marines until 1994, Mr. McMillan spent the next nearly 25 years working as a truck driver. From 1995 through 2000, he worked for FedEx. From 2000 until 2009, he worked as a driver for an Ambulette service. Finally, for the next 10 years, until 2019, Mr. McMillan worked as a driver for Approve, a company that removes and disposes of used needles and sharps from medical sites. Prior to having seven (7) strokes in 2019, he was promoted to a supervisory role at Approve for his exemplary work in his first role at the company.

52.     Following his strokes and resulting hospitalization in 2019, Mr. McMillan moved in with his mother, Ms. McMillan, so she could assist in his care. In doing so, he gave up a 1-bedroom apartment of his own.

53.     Ms. McMillan has resided in the Subject Apartment since 1984. At the time Mr. McMillan moved in, Ms. McMillan's other son, Jamel McMillan ("Jamel"), was residing with her in the Subject Apartment.

**A.  Project-Based Section 8 Recertification**

54.     The Subject Apartment is a deeply affordable Project-Based Section 8 unit regulated by the New York City Department of Housing Preservation and Development ("HPD"). As per HUD regulations, tenants pay a total of 30% of their household income towards rent and tenants must recertify their income annually.  See 24 CFR 5.611. Since 1984, Ms. McMillan has complied with the HUD regulations and maintained her residency at the Subject Apartment.

55.     Because of severity of his disabilities, the United States Department of Veterans Affairs ("VA") provides a home aide to visit Mr. McMillan on Mondays, Wednesdays, and Fridays to support him in taking care of his Activities of Daily Life ("ADLs)." ADLs include assisting Mr. McMillan with essential and routine tasks such as bathing, eating, dressing, cleaning his living space, and moving around the house. Ms. McMillan provides her son with support fulfilling his ADLs on all other days, including weekends, when the home health aide is not scheduled to come in.

56.     Mr. McMillan does not have resources to hire a home health aide during days for which the VA does not offer assistance nor could he afford to rent his own apartment. Accordingly, Mr. McMillan requires his mother's help both to remain sheltered and to receive the care he needs to carry out his ADLs.

57.     In November 2020, Ms. McMillan attempted to recertify her income in order to maintain her tenancy for the following year, as she is required to do annually per the terms of her lease agreement and HUD rules. The recertification process requires the head of household to add qualifying family members residing in the apartment as well as provide proof of their income.

58.     In the fall of 2020, as required by the HUD regulations, Ms. McMillan sought to add Mr. McMillan to her household composition. Defendants, however, declined to permit Mr. McMillan to be added to the family composition, citing as their sole reason, his alleged poor credit.

59.     Defendants informed Ms. McMillan that they would not permit Mr. McMillan to be added to the family composition.

60.     Despite Defendants' denial of permission to add Mr. McMillan, Ms. McMillan did not and, in fact, could not, ask her son to leave the Subject Apartment. Ms. McMillan could not ask her son to leave because he cannot afford an apartment of his own and his disabilities that impair his ability to carry out his ADLs make it impossible for him to live in a New York City homeless shelter.

61.     Defendants took no action to seek Mr. McMillan's removal from the Subject Apartment.

62.     Ms. McMillan continued to recertify annually as required by HUD regulations, including attempting to add Mr. McMillan on the household composition in 2021. In 2021, she noted on the recertification paperwork that Mr. (Duprie) McMillan had been denied official permission to reside at the Subject Apartment. Defendants continued to accept rental payments from her during the period 2021-2022.

63.    Defendant commenced an eviction case against Ms. McMillan and her son Jamel in April 2022 for nonpayment of rent, under Index No. LT-309868-22, alleging the sum of $3,754.00 was owed through February 2022

64.    Jamel McMillan moved out of the Subject Apartment on May 2, 2022.

65.    Ms. McMillan submitted paperwork to recertify on September 8, 2022. In the required household composition letter, Ms. McMillan crossed out Jamel's name to note he was no longer living there and wrote in Mr. (Duprie) McMillan's name, noting Mr. McMillan was not permitted on the family composition by Defendants.

66.    Defendants declined to process Ms. McMillan's recertification paperwork, requesting in a letter dated September 30, 2022 that she provide: "1) a family composition letter; 2) a job letter from Duane Reade for Jamel confirming his employment there; and 3) six (6) paystubs for Jamel from Duane Reade.[2]

67.    Following the letter dated September 30, 2022, Ms. McMillan obtained a letter from Duane Reade for Jamel and submitted his paystubs to Defendants. However, Ms. McMillan could not submit a family composition without Duprie McMillan. She honestly noted that he was living at the Subject Apartment. Ms. McMillan could not ask Duprie McMillan to leave because he cannot afford his own apartment and needs her help carrying out his ADLs.

68.    Ms. McMillan also provided a letter from Willow Rapid Re-Housing Men's Shelter dated September 9, 2022 confirming that Jamel had resided at that shelter since August 11, 2022. This letter is included in Ms. McMillan's tenancy file and stamped as received on September 29, 2022.

---

[2] Jamel worked briefly at Duane Reade from 7/20/2022 to 8/22/2022. Prior to that he was unemployed for three (3) months after leaving a position at FedEx.

69.     Defendants again requested several documents to process Ms. McMillan's recertification paperwork in a letter dated October 21, 2022, including: 1) a complete, signed & notarized family composition letter "(without adding your illegal boarder)"; 2) a job letter from Duane Reade for Jamel confirming his employment there; and 3) six (6) paystubs for Jamel from Duane Reade.

70.     On October 28, 2022, Defendants notified Ms. McMillan, via mail, that she was losing her housing subsidy, claiming she had failed to meet with Defendants to review her income and, as a result, her share of the rent would be changed from $644 per month to the full market rate of $2,047.00 per month effective October 31, 2022.

71.     In the context of the ongoing eviction case, on November 7, 2022, Ms. McMillan's counsel submitted a letter to Defendants' counsel in the eviction matter signed by Ms. McMillan stating that she believed the loss of her housing subsidy was in error and requesting a meeting to discuss and appeal the termination.

72.     On December 15, 2022, the parties' attorneys conferenced the eviction case. Ms. McMillan's counsel asked that Mr. (Duprie) McMillan be added to the housing composition so that Ms. McMillan could recertify and her subsidy could resume.  He also informed Defendants' eviction counsel orally that Mr. McMillan received $2,037.00 in Social Security Disability Insurance ("SSDI") and, if added to the household, approximately 30% of his income would be paid towards the rent. Ms. McMillan's counsel requested that Defendants' eviction counsel speak with Defendants to have Jamel (Ms. McMillan's other son) removed from the housing composition.

73.     Defendants' eviction counsel stated that Duprie McMillan could not be added to the household due to his poor credit. The eviction case was placed on an administrative stay

pending consideration of an application to the Emergency Rental Assistance Program ("ERAP")[3].

74.     On January 27, 2023, Ms. McMillan's counsel provided an income statement for Jamel from his time at Duane Reade to Defendant's counsel via email.

75.     On January 30, 2023, Ms. McMillan's counsel provided another copy of the letter confirming Jamel's shelter status to Defendant's counsel via email, substantiating Jamel's vacatur from the Subject Apartment.

**B.     Request for reasonable accommodation and cooperative dialogue for Ms. McMillan**

76.     On April 5, 2023, Ms. McMillan's counsel sent a formal written Reasonable Accommodation Request to Defendants' eviction counsel via email to initiate a cooperative dialogue under the New York City Human Rights Law. The April 5, 2023 letter requested that, as a reasonable accommodation for Mr. McMillan's disabilities, Defendants make an exception to their purported credit policy and allow Mr. McMillan to be added to Ms. McMillan's household composition.

77.     The April 5, 2023 letter also explained that Mr. McMillan is disabled and has guaranteed income—not subject to garnishment from creditors— in the form of SSDI. The letter explained that even if Mr. McMillan had poor credit, his credit did not reflect on his ability contribute to the household rent, which, after the subsidy is reinstated, will amount to only 30% of household income.

78.     This letter also requested a copy of the credit report used to reject Mr. McMillan as required by the Fair Credit Reporting Act ("FCRA").

---

[3] ERAP is a COVID-era eviction prevention program that assists with rental arrears accumulated during the COVID-19 pandemic. While an ERAP application remains pending, an eviction case is usually stayed.

79.     At no point did Defendants provide any FCRA-mandated information regarding

their adverse decision to reject Mr. McMillan. Defendants provided no written or oral

information other than they rejected Mr. McMillan on the basis of his credit.

80.     Plaintiffs' attorneys also followed up on their request for a reasonable

accommodation and cooperative dialogue on April 24, 2023, and May 2, 2023. However,

Defendants' attorney never responded.

**C.     Reasonable Accommodation and Cooperative Dialogue Request for Mr. McMillan**

81.     On August 3, 2023, Plaintiffs' attorneys contacted Defendants' eviction attorneys

regarding Mr. McMillan via letter. The letter informed Defendants that Mr. McMillan had

retained the Legal Aid Society, along with his mother, to obtain a reasonable accommodation.

82.     Specifically, the August 3, 2023 letter reiterated the request that Defendants make

an exception to their purported credit screening criteria in order to allow Mr. McMillan to join

his mother's housing composition at the Subject Apartment.

83.     The August 3, 2023 letter also asked that Defendants expeditiously engage in a

cooperative dialogue as required by local law regarding this reasonable accommodation request

on behalf of Mr. McMillan.

84.     Finally, this letter requested consumer-related information, including the

consumer credit report used to reject Mr. McMillan as required as required under the FCRA.

85.     As with the multiple letters sent on behalf of Ms. McMillan requesting reasonable

accommodation, Defendants' counsel never responded.

**FIRST CLAIM FOR RELIEF**

*(Duprie McMillan: Failure to Reasonably Accommodate under the Fair Housing Amendments Act, 42 U.S.C. § 3601 et seq.)*

86.    Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1 through 85, as if fully set forth herein.

87.    Duprie McMillan ("Mr. McMillan"), a disabled veteran, sought to join his mother's household as permitted under the rules of the Project-Based Section 8 program so that she could help supply the care he needs due to his disabilities.

88.    Defendants denied Elaine McMillan ("Ms. McMillan")'s request that Mr. McMillan added to her household based on their purported policy barring applicants with poor credit.

89.    Defendants persisted in their denial even after Plaintiffs requested additional information about Defendants' credit policy and sought to obtain a reasonable accommodation to Defendants' purported policy by initiating a cooperative dialogue.

90.    Defendants ignored Plaintiffs' repeated attempts to initiate a cooperative dialogue regarding their request that Defendants make an exception to their purported credit policy as a reasonable accommodation for Mr. McMillan's disabilities.

91.    As a result of Defendants' denial of a reasonable accommodation and complete lack of response to Plaintiffs, Mr. McMillan has been deprived of the opportunity to live with his mother, Ms. McMillan a deeply affordable apartment subsidized by HUD.

92.    The Fair Housing Amendments Act ("FHAA") and its implementing regulations make it unlawful to discriminate in the terms, conditions, or privileges of rental of dwelling, to refuse to rent a dwelling, or to refuse to negotiate for the rental of a dwelling because of a person's handicap.  The FHAA also requires landlords "to make reasonable accommodations in rules, policies, practices, or services." 42 USC § 3604(f)(3)(B).

93.    Mr. McMillan suffers from a handicap as defined by the Fair Housing Amendments Act.

94.    Defendants knew of Mr. McMillan's disabilities.

95.    Accommodation of Mr. McMillan's handicap is necessary to afford him an equal opportunity to use and enjoy a dwelling in Defendants' building.

96.    Defendants have violated the FHAA by discriminating against a person with disabilities in contravention of 42 USC § 3604(f)(2)(A) and by refusing to make reasonable accommodations in its rules, policies, practices, or services in contravention of 42 USC § 3604(f)(3)(B).

97.    A cause of action is created by 42 USC § 3613.

98.    Mr. McMillan has suffered damages as the result of the deprivation of his federal statutory rights in an amount to be determined at trial, and is entitled to monetary relief and injunctive relief pursuant to 42 U.S.C. § 3613(c)(1).

## SECOND CLAIM FOR RELIEF
*(Elaine McMillan: Associational Claim for Failure to Accommodate under the Fair Housing Amendments Act, 42 U.S.C. § 3601 et seq.)*

99.    Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1 through 85, as if fully set forth herein.

100.    The Fair Housing Amendments Act ("FHAA") and its implementing regulations make it unlawful to discriminate in the terms, conditions, or privileges of rental of dwelling, to refuse to rent a dwelling, or to refuse to negotiate for the rental of a dwelling because of a person's handicap.  The FHAA also requires landlords "to make reasonable accommodations in rules, policies, practices, or services." 42 USC 3604 § (f)(3)(b).

101.    The FHHA creates a claim for individuals associated with those who have disabilities or handicaps, by conferring protections on renters with disabilities and "any person associated with that buyer or renter." 42 USC 3604 § (f)(2)(C).

102.    Ms. McMillan is a person associated with a disabled renter and, accordingly, has an associational claim under the FHAA.

103.    Defendants knew of Mr. McMillan's disabilities, and of Ms. McMillan's association with her son, Mr. McMillan, for whom she offers essential in-home care.

104.    As a result of Defendants' refusal to allow Mr. McMillan to join her household, Ms. McMillan has been deprived of the opportunity to use and enjoy her apartment as a home for her immediate family and as a place where she can provide her disabled son with the care he needs for his survival.

105.    Ms. McMillan has also incurred unaffordable market rental charges due to the loss of her Project Based Section 8 subsidy resulting from Defendants' refusal to allow her to add Mr. McMillan to her household.

106.    A cause of action is created by 42 USC § 3613.

107.    Ms. McMillan has suffered damages as a result of Defendants' failure to accommodate her son, as required by federal law, and as a result of her association with Mr. McMillan and entitled to monetary and injunctive relief pursuant to 42 USC § 3613(c)(1).

### THIRD CLAIM FOR RELIEF
*(Duprie McMillan: Failure to Accommodate under the New York State Human Rights Law (N.Y. Exec. Law § 290 et seq.)*

108.    Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1 through 83 as if fully set forth herein.

109.    Mr. McMillan sought to join his mother's household as permitted under the rules of the Project-Based Section 8 program so that she could help supply the care he needs due to his disabilities.

110.    Defendants denied Ms. McMillan's request that Mr. McMillan be added to her household based on their purported policy barring applicants with poor credit.

111.    Defendants persisted in their denial even after Plaintiffs explained that making an exception to their purported policy would be reasonable considering Mr. McMillan's actual ability to contribute to the household rent should the subsidy be reinstated.

112.    As a result of Defendants' denial of a reasonable accommodation, Mr. McMillan has been deprived of the opportunity to live with his mother, Ms. McMillan, in the Subject Apartment with the benefit of a federal Project-Based Section 8 subsidy.

113.    The New York State Human Rights Law prohibits discrimination in the sale or rental of housing accommodations. NY Exec. Law § 296(2-a).

114.    The New York Human Rights Law further provides that it is an unlawful discriminatory practice for the owner of a housing complex to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford said person with a disability equal opportunity to use and enjoy a dwelling. N.Y. Exec. Law § 296(18)(2).

115.    Defendants' denial of Mr. McMillan's request to be added to the family composition for the Subject Apartment, and their refusal to make an exception to their purported credit policies as a reasonable accommodation violates the New York State Human Rights Law.

116.     A cause of action is created by N.Y. Exec. Law § 297(9).

-22-

117.    Mr. McMillan has suffered damages as the result of the deprivation of his statutory rights in an amount to be determined at trial, and is entitled to monetary relief and injunctive relief pursuant to N.Y. Exec. Law § 297(9).

### FOURTH CLAIM FOR RELIEF

*(Elaine McMillan: Failure to Accommodate under the New York State Human Rights Law (NY Exec. Law § 290 et seq.)*

118.    Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1 through 85, as if fully set forth herein.

119.    The New York State Human Rights Law prohibits discrimination in the sale or rental of housing accommodations. NY Exec. Law § 296 (2-a).

120.    The New York State Human Rights Law further provides that it is an unlawful discriminatory practice for the owner of a housing provider to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford said person with a disability equal opportunity to use and enjoy a dwelling. NY Exec. Law § 296(18)(2).

121.    The New York State Human Rights Law and its implementing regulations also prohibit discrimination on the basis of an individual's "known relationship or association with a member or members of a protected category." 9 CRR-NY 466.14.

122.    Defendants are aware of Mr. McMillan's disabilities and of Ms. McMillan's association with her disabled son.

123.    As a result of Defendants' refusal to allow Mr. McMillan to join Ms. McMillan's household, Ms. McMillan has been deprived of the opportunity to use and enjoy her apartment as a home for her immediate family and as a place where she can provide essential care for her disabled son.

124.    Ms. McMillan has also incurred unaffordable market rental charges and lost the benefit of her Project-Based Section 8 subsidy due to Defendants' refusal to accommodate her disabled son and allow him to join the family composition.

125.    A cause of action is created by NY Exec. Law § 297(9) based on Ms. McMillan's association with her disabled son, Mr. McMillan.

126.    Ms. McMillan has suffered damages as the result of the deprivation of her statutory rights in an amount to be determined at trial, and is entitled to monetary relief and injunctive relief pursuant to NY Exec. Law § 297(9).

## FIFTH CLAIM FOR RELIEF
*(Duprie McMillan: Failure to accommodate New York City Human Rights Law § 8-102 et seq.)*

127.    Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1 through 85, as if fully set forth herein.

128.    The New York City Human Rights Law prohibits discrimination against any person on the basis of disability, and requires owners of housing units to make reasonable accommodations to enable people with a disability "to enjoy the rights in question."  NYCHRL §§ 8-107(5)(a), 8-107(15).

129.    Mr. McMillan sought to join his mother's household as permitted under the rules of the Project-Based Section 8 program so that she could help supply the care he needs due to his disabilities.

130.    Defendants denied Ms. McMillan's request that Mr. McMillan be added to her household based on their purported policy barring applicants with poor credit.

131.    Defendants persisted in their denial even after Plaintiffs attempted to initiate a cooperative dialogue and explained that making an exception to their policies would be

reasonable in light of Mr. McMillan's actual ability to contribute to the household rent in the future.

132.     As a result of Defendants' denial of an accommodation, Mr. McMillan has been deprived of the opportunity to live with his mother, Ms. McMillan, in an apartment subsidized by the Project-Based Section 8 program.

133.     Defendants' refusal to add Mr. McMillan to the housing composition for the Subject Apartment constitutes a failure to reasonably accommodate Mr. McMillan by making an exception to their purported credit screening criteria and violates the New York City Human Rights Law.

134.     A cause of action is created by NYCHRL § 8-502(a).

135.     Plaintiff Mr. McMillan has suffered damages in an amount to be determined at trial, and is entitled to monetary relief and injunctive relief pursuant to NYCHRL § 8-502(a).

### SIXTH CLAIM FOR RELIEF
*(Elaine McMillan: Failure to accommodate New York City Administrative Code § 8-107 et seq.)*

136.     Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1 through 85, as if fully set forth herein.

137.     The New York City Human Rights Law ("NYCHRL") prohibits discrimination against any person on the basis of disability, and requires owners of housing units to make reasonable accommodations to enable people with a disability "to enjoy the rights in question." NYCHRL §§ 8-107(5)(a), 8-107(15).

138.     The NYCHRL creates a cause of action for individuals who have a "known relationship" or "association" with members of a protected class.  NYCHRL § 8-107(20)

139.     Defendants were aware of Mr. McMillan's disabilities and Ms. McMillan's association with her disabled son.

140.    As a result of Defendants' refusal to allow Mr. McMillan to join her household, Ms. McMillan has been deprived of the opportunity to use and enjoy her apartment as a home for her immediate family and as a place where she can provide her disabled son with the care he needs for his survival.

141.    Ms. McMillan has also incurred unaffordable rental charges due to Defendants' refusal to reasonably accommodation her son Mr. McMillan, resulting in Defendants terminating her federal subsidy.

142.    A cause of action is created by NYCHRL § 8-502(a).

143.    Plaintiff Ms. McMillan has suffered damages in an amount to be determined at trial, and is entitled to monetary relief and injunctive relief pursuant to NYCHRL § 8-502(a).

## SEVENTH CLAIM FOR RELIEF
*(Elaine McMillan: Failure to Engage in a Cooperative Dialogue pursuant to NYCHRL § 8-107(28))*

144.    Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1 through 85, as if fully set forth herein.

145.    The NYCHRL creates a cause of action for individuals who have a "known relationship" or "association" with members of a protected class. NYCHRL § 8-107 (20).

146.    Defendants were aware of Mr. McMillan's disabilities and Ms. McMillan's association with her disabled son.

147.    The NYC Human Rights Law requires housing providers to engage in a cooperative dialogue within a reasonable amount of time NYCHRL § 8-107(28).

148.    The NYCHRL requires the housing provider to memorialize the results of the cooperative dialogue in writing, even if the result is to deny the request for a reasonable accommodation.

149.    Plaintiffs' attorneys, on behalf of Plaintiff Ms. McMillan attempted to initiate a cooperative dialogue on several occasions, in writing, and orally with Defendants' attorneys. Defendants not only failed to engage in a meaningful dialogue but simply failed to respond on multiple occasions in violation of NYCHRL 8-107(28).

150.    A cause of action is created by NYCHRL § 8-502(a).

151.    Plaintiff Ms. McMillan has suffered damages in an amount to be determined at trial, and is entitled to monetary relief and injunctive relief pursuant to NYCHRL § 8-502(a).

### EIGHTH CLAIM FOR RELIEF
*(Duprie McMillan: Failure to Engage in a Cooperative Dialogue pursuant to NYCHRL § 8-107(28)).*

152.    Plaintiffs hereby repeat and reallege each and every allegation in paragraphs 1 through 85, as if fully set forth herein.

153.    The NYCHRL requires housing providers to engage in a cooperative dialogue within a reasonable amount of time NYCHRL § 8-107(28).

154.    The NYCHRL requires the housing provider to memorialize the results of the cooperative dialogue in writing, even if the result is to deny the request for a reasonable accommodation.

155.    Plaintiffs' attorneys, on behalf of Mr. McMillan, attempted to initiate a cooperative dialogue on several occasions, in writing, and orally. Defendants not only failed to engage in a meaningful dialogue but simply failed to respond in violation of NYCHRL§ 8-107(28).

156.    A cause of action is created by NYCHRL § 8-502(a).

157.    Plaintiff Mr. McMillan has suffered damages in an amount to be determined at trial, and is entitled to monetary relief and injunctive relief pursuant to NYCHRL § 8-502(a).

## NINTH CLAIM FOR RELIEF

*(Duprie McMillan: Violations of the Fair Credit Reporting Act ("FCRA") 15 USC §1681)*

158.    Defendants are landlords who utilized consumer credit information for the purposes of tenant-screening. 6 C.F.R. Part 600, App., § 604(3)(E), cl. 3.

159.    Mr. McMillan is a consumer as defined by the Fair Credit Reporting Act ("FCRA"), 15 USC § 1681a because Defendants screened Mr. McMillan as a prospective tenant and purported to do so under using credit criteria.

160.    Despite purporting to reject Mr. McMillan on the basis of his credit worthiness, Defendants never provided any of the required notices under the FCRA as required by 15 USC § 1681m.

161.    Defendants also violated the FCRA by failing to provide Mr. McMillan with information required under the Act, including but not limited to: credit score (if any) used to make the determination, the consumer report used to make the determination, the contact information for the consumer reporting agency used to make the adverse decision; information about how to challenge the contents of the consumer report. 15 USC § 1681m.

162.    Defendants also repeatedly and willfully failed to respond to Plaintiffs' repeated request for copies of the consumer report Defendants allegedly used to reject Mr. McMillan.

163.    A cause of action is created under 15 USC §§ 1681n – 1681o.

164.    Defendants are liable for actual damages, punitive damages, reasonable attorneys fees and costs pursuant to 15 USC § 1681n for willful non-compliance and/or 15 USC § 1681o for negligent non-compliance.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs DUPRIE MCMILLAN and ELAINE MCMILLAN request judgment:

a) declaring that Defendants' refusal to reasonably accommodate Plaintiff Duprie McMillan's disability, violates the Fair Housing Amendments Act, 42 USC § 3601 et seq.; the New York State Human Rights Law, NY Exec. Law §§ 290(5)(a) and 290(18); and the New York City Human Rights Law, NYC Admin. Code § 8-107(5)(a);

b) declaring that Defendants' refusal to grant Plaintiff Elaine McMillan's request for reasonable accommodation on behalf of her son, Mr. McMillan violates the Fair Housing Amendments Act, 42 USC § 3601 et seq.; the New York State Human Rights Law, NY Exec. Law §§ 290(5)(a) and 290(18); and the New York City Human Rights Law, NYC Admin. Code § 8-107(5)(a);

c) Declaring that Defendants' failure to engage in a cooperative dialogue based upon Plaintiff Elaine McMillan and Plaintiff Duprie McMillan's request violates the New York City Human Rights Law. NYC Admin. Code 8-107(28)

d) issuing an injunction directing Defendants to approve Duprie McMillan's addition to Elaine McMillan's household, and to complete Ms. McMillan's income recertification retroactive to the date Defendants first began charging Plaintiffs market rent;

e) awarding Plaintiffs compensatory and punitive damages in an amount to be determined by this court;

f) awarding legal fees and costs associated with this action; and

g) other relief that the Court may deem just and proper.

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: New York, New York
       August 29, 2023

THE LEGAL AID SOCIETY

By:      */s/ Stephanie Rudolph*
Edward Josephson
Matthew Tropp
Emmett Gienapp

49 Thomas Street, 5th Floor
New York, NY 10038
Tel: (646-988-0997)
srudolph@legal-aid.org